IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

HAWKEYE GOLD, LLC,                                4:15-cv-00230-REL-RAW

                    Plaintiff(s),

vs.

NON-METALS, INC.,                                 REPORT AND RECOMMENDATION ON
                                                  PLAINTIFF'S MOTION FOR DEFAULT
                                                  JUDGMENT

                    Defendant(s).

    This action involves a contract for sale ("the contract")
between Hawkeye Gold, LLC and Non-Metals, Inc. by which Non-Metals
agreed to purchase "dried distillers grains with solubles"
("DDGS") from Hawkeye Gold. Hawkeye Gold alleges that Non-Metals
breached the contract by refusing to accept delivery of the DDGS
and failing to make payment.

    Hawkeye Gold filed its Complaint on July 22, 2015 [1]. On
July 27, 2015 it filed a First Amended Complaint [4]. Summons
together with the Complaint and First Amended Complaint were served
on Non-Metals' registered agents in Illinois and Arizona on,
respectively, July 31, 2015 and August 3, 2015. Non-Metals did not
answer or file a responsive pleading within the time provided in
the summons served on each agent. On September 18, 2015 Hawkeye
Gold filed a motion for entry of default [10]. Default was entered
by the Clerk on September 25, 2015 [11]. On October 27, 2015

Hawkeye Gold filed the present motion for default judgment [12]. By order entered November 4, 2015 [13], the Court directed Hawkeye Gold to supplement its motion with additional information. On November 18, 2015 Hawkeye Gold filed a Supplemental Brief in support of the motion for default judgment [15], accompanied by additional declarations and exhibits. The motion for default judgment has been referred to me for report and recommendation.

In light of the declarations in the motion papers, an evidentiary hearing is not necessary. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Venue in this district is appropriate under the forum selection clause in the contract. The matter is fully submitted.

On default the Court takes all well-pleaded factual allegations in the Complaint (in this case, the First Amended Complaint) as true. *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010); Fed. R. Civ. P. 8(b)(6)("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.") The facts pleaded in the First Amended Complaint establish the following. Hawkeye Gold markets feed products produced by ethanol plants including DDGS. Non-Metals is engaged in the business of buying DDGS. On or about July 22, 2014 Hawkeye Gold entered into a contract with Non-Metals for the sale of DDGS. The contract is Exhibit A to the First Amended Complaint and a copy is also

2

attached as Exhibit A to the Declaration of Marsha Webster [12-2]. A more legible copy of the contract is attached as Exhibit B1 to the Supplemental Declaration of Ms. Webster [15-1]. The contract required Hawkeye Gold to deliver shipments of DDGS to Non-Metals and for Non-Metals to make full payment to Hawkeye Gold. Hawkeye Gold has performed all terms and conditions of the contract.

Non-Metals breached the contract by refusing to accept delivery of the DDGS delivered or attempted to be delivered by Hawkeye Gold and by failing to make payment as required by the contract.

From this point a more detailed recitation of the background facts and the basis for Hawkeye Gold's damages claim are to be found in the Original and Supplemental Declarations of Ms. Webster, Hawkeye Gold's Chief Financial Officer, and accompanying exhibits. Under the contract Hawkeye Gold agreed to sell, and Non-Metals to purchase, approximately 230 containers each containing 26.1 metric tons of DDGS, totaling about 6,003 metric tons.[1] The price was $327.62 per metric ton. The DDGS was to be shipped to Qingdao, China. (Webster Supp. Decl. [15-1] at 1 and Ex. B-1). The contract adopts the trade rules of the National Grain and Feed Association ("NGFA"). Rule 19(B)(3) of those rules provides three options upon buyer's default of "the shipping schedule and/or the contract

---

[1] Hawkeye Gold rounds this to 6000 metric tons in calculating its damages.

shipping period," one of which is to "cancel the defaulted portion of the shipments at fair market value based on the day this option is exercised." (*Id.* at 2 and Ex. E at 23). When Non-Metals repudiated the contract, Hawkeye Gold on August 16, 2014 notified Non-Metals that it was in default of the shipping period. (*Id.* and Ex. F). Hawkeye Gold exercised the quoted option effective August 19, 2014. (*Id.* at 3 and Ex. F; *see* Webster Orig. Decl. [12-2] at 1-2). At the time 1566.1617 metric tons of DDGS (on which about $513,106 was owed) was "on the water" en route to China. This shipped DDGS was diverted by Hawkeye Gold for delivery elsewhere at an additional cost of $22.08 per metric ton. (Webster Supp. Decl. [15-1] at 3). Hawkeye Gold invoiced Non-Metals for the difference between the contract price and fair market value at the time Hawkeye Gold exercised its option. This amount, $243,694.77, which incorporates adjustment for the diversion cost, is calculated on the basis of a difference between price and market value of $155.60 per metric ton. (*Id.* and Ex. F; Orig. Webster Decl. [12-2] Ex. C).

With respect to the unshipped remaining 4433.8383 metric tons (on which about $1,452,615 was owed) Hawkeye Gold invoiced Non-Metals for $493,353.28 (the correct figure should be 19, not 28 cents) representing the difference between the contract price and fair market value at the time Hawkeye Gold exercised its option,

calculated at $111.27 per metric ton. (Webster Supp. Decl. [15-1] at 3 and Ex. F; Orig. Webster Decl. [12-2] Ex. B).[2]

Non-Metals has not paid the invoice for the shipped DDGS, or the invoice for the unshipped DDGS.

The contract provides that (to the extent not inconsistent with NGFA rules) it "shall be governed and construed in accordance with the laws of the State of Iowa, including the Iowa Uniform Commercial Code ("UCC")." (Webster Supp. Decl. [15-1] at 6). Unless inadequate (which Hawkeye Gold does not contend) "the [UCC] measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages . . . but less expenses saved in consequence of the buyer's breach." Iowa Code § 554.2708(1). *See Data Documents, Inc. v. Pottawattamie County*, 604 N.W.2d 611, 616 (Iowa 2000). Sufficient proof of market price and the unpaid contract price must be presented. *Id.* at 616; *see Purina Mills, L.L.C. v. Less*, 295 F. Supp. 2d 1017, 1034 (N.D. Iowa 2003). In her declaration Ms. Webster states that she has knowledge of the fair market value of DDGS and includes in her exhibits documentation of fair market

---

[2] The amounts invoiced to Non-Metals for both the shipped and unshipped DDGS (Ex. F to Webster Supp. Decl. [15-1] at 25-26) vary a few cents from the calculation provided to Non-Metals. (*Id.* at 19). These insignificant differences appear to result from minor rounding of the tonnage amounts in the calculation provided to Non-Metals.

value on August 19, 2014. (Webster Supp. Decl. [15-1] at 2 and Ex.
F at 21-24). Hawkeye Gold's damages may be computed from the
difference between the market price and contract price as shown in
the record. *See Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330,
1333 (8th Cir. 1988)(evidentiary hearing on default damages not
necessary where damages may be computed from facts of record,
citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). The total
damages sought by Hawkeye Gold is the difference between the market
price of the DDGS at the time and place for tender and the unpaid
contract price. (Orig. Webster Decl. [12-2] at 2). Hawkeye Gold
has not saved expenses in consequence of the breach.

Hawkeye Gold has established all of the essential elements of
breach of contract: (1) the existence of the contract; (2) the
terms of the contract; (3) Hawkeye Gold did what the contract
required of it; (4) breach by Non-Metals; and (5) the amount of
damage caused. *Iowa Mortgage Center, L.L.C. v. Baccam*, 841 N.W.2d
107, 110-11 (Iowa 2013)(quoting *Molo Oil Co. v. River City Ford
Truck Sales, Inc.*, 578 N.W.2d 222,224 (Iowa 1998)). The amount of
damage caused by the breach is $737,047.96. In addition, Hawkeye
Gold claims $11,055.73 in accrued prejudgment interest at the 1.5%
per month contract rate. (*See* Pl. Supp. Brief [16-1] at 5; Ex. B1
¶ 6 to Webster Supp. Decl. [16-2]). The Court will include the
claimed prejudgment interest in the judgment.

Hawkeye Gold also seeks an award of $36,186.99 in attorney fees and costs. (Buter Supp. Decl. [15-2] at 2). Of this amount, $28,097.92 is for attorney fees and costs incurred by Hawkeye Gold in defending an action brought by Non-Metals in the United States District Court for the Northern District of Illinois alleging breach of the contract.[3] The Illinois court dismissed the action on June 18, 2015 on the basis of improper venue in light of the forum selection clause in favor of this district. *Non-Metals, Inc. v. Hawkeye Gold, LLC*, Case No. 14-cv-9161, Order (N.D. Ill. June 18, 2015)(Ex. A to Orig. Buter Decl. [12-3] at 4-8). The attorney fees clause in the contract is arguably broad enough to encompass fees and costs incurred in defending the Illinois action. It provides: "If you fail to comply with any of the terms, conditions, or provisions hereof, and should it become necessary for HG to incur costs or engage the services of others, you agree to pay all costs and expenses incurred by HG, including costs and reasonable

---

[3] Hawkeye Gold's separate attorney fees and costs incurred in defending the Illinois action and in prosecuting the action in this Court can be determined by reviewing the invoice summary attached to attorney Victoria Buter's Supplemental Declaration (Ex. C [15-2] at 4) together with the invoices provided with the summary. The invoices dated August 31, 2015; September 24, 2015; and October 28, 2015 are for attorney fees and "disbursements" pertaining to this action. All else is for the Illinois action. The disbursements listed in the August-October invoices are included in the costs claimed and awarded separately. The line item in the August-October invoices for "services rendered" appears to include a small amount for legal assistant services which the Court has included in the attorney fee award.

attorney's fees . . . ." (Ex. B1 ¶ 6 to Webster Supp. Decl. [16-2]). The problem with awarding attorney fees and costs for defending the Illinois action is that Hawkeye Gold's First Amended Complaint in this district gave no notice to Non-Metals that it was seeking such an award. The First Amended Complaint merely alleges breach of the contract by refusing to accept delivery of the DDGS and failing to make payment in the amounts invoiced by Hawkeye Gold. It does not allege that Non-Metals breached the contract by bringing the Illinois action. On the subject of attorney fees the First Amended Complaint states only that Hawkeye Gold seeks judgment "in the amount of $737,048.05 plus prejudgment and post-judgment interest . . . and further relief . . . including Hawkeye Gold's reasonable attorneys' fees and costs." (First Amended Complaint [4] at 4). At most the First Amended Complaint provides notice that Hawkeye Gold is seeking attorneys' fees and costs incurred in prosecuting this action.

Under Fed. R. Civ. P. 54(c) "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." The principle behind the rule "is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort and money necessary to defend the action. 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2663 at 171 (2014)("Wright & Miller"); *see* 10 *Moore's Federal Practice* §

55.34[1] at 55-62, -63 (3d ed. 2015)("The purpose of the rule is ensure that a party, before deciding not to defend the action, has notice as to the potential extent of the judgment"). Accordingly, "a default judgment may not extend to matters outside the issues raised by the pleadings or beyond the scope of the relief demanded." Wright & Miller at 172-73. Hawkeye Gold's attorney fees and costs incurred in defending the Illinois action is a matter outside the issues raised in Hawkeye Gold's pleadings in this action and, it follows, is beyond the scope of the relief demanded considered in light of the issues raised in the pleadings.

The Court notes that the disbursements listed in the August-October 2015 invoices totaling $916.57 appear to include all costs which could be taxed on a bill of costs. The Court will include this amount in the judgment entry and accordingly Hawkeye Gold shall not file a separate bill of costs. Hawkeye Gold's claimed attorney fees incurred in this action totaling $7,172.50 appears fair and reasonable in amount for the services performed. Accordingly, judgment in the amount of $8,089.07 should be entered in favor of Hawkeye Gold for attorney's fees and costs.

### RECOMMENDATION AND ORDER

IT IS RESPECTFULLY RECOMMENDED that Hawkeye Gold's Motion for Default Judgment [12] be granted to the extent indicated in the foregoing discussion and that judgment substantially as follows be entered:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of Hawkeye Gold, LLC and against Non-Metals, Inc. in the total amount of $748,103.69 representing the amount owed by Non-Metals, Inc. under contract and accrued interest at the contract interest rate.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in addition judgment is entered in favor of Hawkeye Gold, LLC and against Non-Metals, Inc. for attorney fees and costs in the total amount above of $8,089.07.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that post-judgment interest shall accrue as provided in 28 U.S.C. § 1961.

IT IS ORDERED that by **January 25, 2016** any written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), shall be filed. *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Wade for Robinson v. Callahan*, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *Thompson*, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of plaintiff's right to appeal questions of fact. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994); *Halpin v. Shalala*, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); *Thompson*, 897 F.2d at 357.

IT IS SO ORDERED.

Dated this 5th day of January, 2016.

_____
ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE